**\*UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DARLENE HUDSON,**

                                    **Plaintiff,**

        **-against-**                                    **06-CV-1534**

**BRIAN FISCHER in his capacity**
**as Commissioner of the NEW YORK**
**STATE DEPARTMENT OF CORRECTIONAL**
**SERVICES,**

                                    **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                            **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff, an employee of the New York State Department of Correctional Services

("DOCS"), asserts claims of employment discrimination under Title VII, 42 U.S.C § 2000e,

et seq. ("Title VII"), sounding in theories of hostile work environment and retaliation.

Defendant moves pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing

Plaintiff's action in its entirety.  Plaintiff has opposed the motion.

**II.     STANDARD OF REVIEW**

        The Court will apply the well-settled standard for deciding summary judgment

motions in discrimination actions. See Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, 477 U.S. 242,

1

248 (1986); <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000); <u>Bracci v. N.Y.S.</u> <u>Dept. of Correctional Services</u>, 2005 WL 2437029, at * 1 (N.D.N.Y. Sept. 30, 2005) (McAvoy, S.J.).

### III.    FACTS[1]

Plaintiff is a Corrections Officer employed by the New York State Department of Correctional Services ( "DOCS" ).  She has been employed by DOCS since October 1989 and is presently assigned to the Albion Correctional Facility.

From February 2005 to June 9, 2005, Plaintiff was assigned to the Shawangunk Correctional Facility.  While at Shawangunk, Plaintiff worked as a resource officer on the 8 a.m. to 4 p.m. shift.  A resource officer is assigned to a different post at the facility each day.  On June 9, 2005, Plaintiff did not receive an assignment at the daily roll call.  After dismissal she approached her supervisor and asked for an assignment.  She was assigned to the maintenance area although she had never worked there before.

The maintenance area is a large room that contains a number of tables used by inmates and staff working in that area to meet and discuss their work assignments for the day.  Civil employees who work in the maintenance area have cubicles located on the perimeter of the room. The officer in charge of the maintenance area, which was Plaintiff's assignment on June 9th, is stationed primarily at a desk that is situated so that the officer

---

[1] The background facts are taken from the parties' L.R. 7.1(a)(3) Statements of Material Facts. On this motion, the Court accepts as true those facts that are admitted by the opposing party, or that are supported by admissible evidence and not properly denied.  <u>See</u> L.R. 7.1(a)(3)("Each denial shall set forth a specific citation to the record where the factual issue arises.").  The Court views all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u> at 1776.

can monitor the inmates' movements in the area.

Once in the maintenance area, Plaintiff met the officer on duty from the prior shift who gave her the radio and keys and then left.  An on-the-job officer trainee named Corey Russell was sent down to the area to observe and to be taught the post duties by Plaintiff. Plaintiff was the only female in the maintenance area that day.

At about 8:40 a.m., Plaintiff's attention was drawn to a table where four inmates were sitting and laughing at an item that a civilian employee, Plumber/Steam Fitter Adrian Brunson, was carrying to the table.  As Brunson walked to the table carrying the object, he did not say anything to Plaintiff, but Plaintiff assumed that Brunson was aware of her presence in the maintenance area because "being a correction officer for 15 years, everyone knows when a female is in the area."  Plf. Dep. pp. 35-36.  Brunson placed the object on the table and members of the group then looked at Plaintiff and back to the table while continuing to laugh.

Plaintiff observed what appeared to be a fake penis moving up and down on the table.  She walked to the table and saw that Brunson had a gag gift called a "Mr. Butt Face Pen Holder" on the table.  The toy was a parody-type figurine of a male with a large nose and glasses laying on its stomach with its pants pulled down exposing a hole in the buttocks of the figurine.  When a pen was inserted in the hole, the figurine's head lifted up and the figurine emitted noises sounding like moans and groans.  Brunson was inserting a pen into the hole, causing the inmates to laugh.  When Plaintiff ordered Brunson to put the toy away, he held it up to Plaintiff and laughed saying "But why?  What's wrong?"  Plaintiff ordered Brunson to put the toy away a second time and he complied, putting it away in his cubical.

3

Plaintiff and Brunson did not know each other before the day of the incident, and this was the first time they had encountered one another other than to pass in the common areas in the facility.   Brunson attests that

> [t]he purpose of showing [the pen holder] to the inmates on the day in question was merely to lighten the mood of the inmates working for me.  It was my way of being funny.  At the time I was showing the pen holder to the inmates I was not aware of Officer Hudson being in the area and was not aware that she would be working in the area that day.  My bringing the pen holder to the table was in no way connected to or motivated by the presence of Officer Hudson.  I was not aware of her presence in the maintenance area until after she approached the table.

Brunson Aff. ¶¶ 7-10.

The situation upset Plaintiff because she felt that her authority over the male inmates had been compromised.  After returning to her desk, she called to a central area asking for the Area Supervisor and requesting to be relieved.  An officer named Bennett answered the phone and responded to Plaintiff's request to be relieved by stating that she "needed to calm down" and that "Mr.  Brunson was a nice guy."  Plaintiff was relieved at 9:00 a.m.

Upon being relieved, Plaintiff met with Sergeant Myers, her immediate supervisor on that day, and Captain Connolly, the Captain on duty.  Plaintiff was upset and crying about the incident. Buther-Jones Aff. ¶ 11.  A female officer was sent in to talk to her and make her more comfortable.  Id. The Captain explained that the toy had been brought into the facility a couple of weeks before the incident as a "gag gift" for a staff member who had been promoted.  Id. ¶12.  Plaintiff felt that the Captain was making excuses for Brunson but Plaintiff was instructed to sit in a conference room and write out the details of the incident in an incident report. The matter was reported to the DOCS's Office of

4

Diversity Management.[2]

While Plaintiff was in the conference room, Diversity Management Member Earnel Bodison came into the room and stated to Plaintiff: "I don't want to know what happened and don't tell me what happened." Bodison then explained that he was a friend of Brunson and that Brunson was having a "bad day, problems with his wife and marriage." After being asked three times by Bodison, Plaintiff agreed to meet with Brunson and hear his apology. Shortly thereafter, Bodison, Brunson, and Brunson's supervisor, Richard Stokes, entered the conference room and Brunson apologized. Plaintiff told Brunson that his conduct was extremely inappropriate and jeopardized her safety as well as the safety of others. Stokes told Plaintiff that Brunson was a good employee. Plaintiff felt that Bodison and Stokes were more concerned with how Brunson was affected by the situation then how she was affected.

Plaintiff filed the incident report with Kay Knott, Deputy Superintendent for Administration at Shawangunk on June 9th. Def. Ex. D. On the same day, Knott transferred the incident report along with statements from Brunson and C.O. Trainee Russell to Charles R. Harvey, the DOCS's Director of Diversity Management. A copy of the documents was also sent to Joseph T. Smith, Superintendent at Shawangunk. Id. After filing the incident report, Plaintiff encountered a "union rep" in the hallway who stated: "I've been friends with Mr. Brunson for 11 years, I don't know how I can help you." Plf. Dep. p. 69. Plaintiff then left work on medical leave. She did not return to work at Shawangunk that or any other day.

_____

[2]It is unclear who reported the incident to Diversity Management.

5

An investigation into Plaintiff's sexual harassment complaint was conducted by the DOCS's Affirmative Action Administrator Lucy Buther-Jones.  See Def.  Ex.  E.   The investigation included a June 13, 2005 interview with Plaintiff, a June 15, 2005 interview with Brunson, and a June 15, 2005 interview with Bodison.  Id.  Buther-Jones found Plaintiff's complaint "to be substantiated" and spoke with Superintendent Smith and Deputy Superintendent for Administrative Services Knott about her conclusion and recommendations on addressing the issue.  Id.

When Plaintiff returned to Shawangunk for a copy of her signed incident report, she was handed blank transfer documents under the report although she had not requested a transfer.  As she was leaving the facility that day, a corrections officer called Plaintiff by a vulgar, derogatory female epithet.  Plaintiff believed that her safety at Shawangunk had been compromised by the June 9th incident and because she "never felt any support from co-workers or superiors relative to [her] situation."  Hudson Aff.  ¶ 8.  As a result of these concerns, Plaintiff sent Buther-Jones a letter dated July 3, 2008.  In the letter, Plaintiff thanked Buther-Jones for speaking with her and reiterated her concerns for her safety arising from the June 9th incident.  Def.  Ex. I.

On July 7, 2005,  Buther-Jones issued a memorandum to Office of Diversity Management Director Harvey outlining her investigation, conclusions, and recommendations.  Def.  Ex.  E.  Brunson was formally counseled, received a formal counseling letter in his personnel file, and was required to attend sexual harassment training.  Def.  Ex.  L.  Director Harvey sent a letter dated July 7, 2005 to Plaintiff advising that the DOCS had completed its investigation and had referred the matter to the Shawangunk Facility Administrator for "appropriate action." Def.  Ex.  J.  The letter

6

indicated that the Office of Diversity Management would take no further action on the matter and advised Plaintiff to contact that office if she had any further problems or if she was retaliated against for having filed the complaint. Id.  Superintendent Smith was advised of the results of the investigation and of the remedial actions taken against Brunson.  Def.  Ex.  K.  Smith, in turn, issued a memorandum to all department heads reminding them of the DOCS's policies and standards regarding conduct of and toward all employees, including but not limited to the prohibition of "gag gifts" of a derogatory or sexual nature in the facility.  Def.  Ex.  N.

In August 2005, Plaintiff requested a transfer to Fishkill Correctional Facility, the facility she had worked at prior to her transfer to Shawangunk.  The transfer was granted and, consequently, she never worked with Brunson again.  She asserts, however, that "the circumstances at Shawangunk had been communicated to co-workers at Fishkill" and that this resulted in her being "put on 'the burn' at Fishkill" as a form of retaliation.  Plf.  Aff.  ¶ 10.  According to Plaintiff, "'[t]he burn' is an established practice of subjecting any officer to heightened scrutiny and to impose discipline for minor offenses or performance deficiencies that would otherwise not result in discipline."  Id.  at  ¶ 11.  As discussed more fully below, Plaintiff offers a 161 page, single-spaced handwritten "log" of the events at Fishkill as proof supporting her retaliation claim.

On November 7, 2005, Plaintiff filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission.  Plaintiff transferred to Albion Correctional Facility in November of 2007.

**IV.     Discussion**

    **a.**    <u>**Sexual Harassment/Hostile Work Environment**</u>

    Title VII makes it unlawful for employers to discriminate against individuals based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  This also prohibits "requiring people to work in a discriminatorily hostile or abusive environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993); <u>see</u> <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65 (1986)("Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.").  To prevail on a hostile environment sexual harassment claim, a plaintiff must establish both (1) a hostile work environment, and (2) a basis for imputing the harassing conduct to the employer. <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997).

    **1.     Hostile Work Environment**

    A hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 78 (1998).

> To prevail on a hostile work environment claim, a plaintiff must show "conduct (1) that is 'objectively' severe or pervasive-that is, [conduct that] creates an environment that a reasonable person would find hostile or abusive [the 'objective' requirement], (2) that the plaintiff 'subjectively perceives' as hostile or abusive [the 'subjective' requirement], and (3) that creates such an environment because of plaintiff's sex... [the 'prohibited causal factor' requirement]." <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001)(citing <u>Gregory v. Daly</u>, 243 F.3d 687, 691-92 (2d Cir. 2001)).

<u>Byra-Grzegorczyk v. BristolMyers Squibb Co.</u>, 2008 WL 3870692, at * 9  (D. Conn. Aug. 20, 2008).

8

Here, there is no dispute that Plaintiff perceived the conditions of her employment as hostile.  She asserts that she was extremely upset by the incident and fearful for her safety afterward. Thus, the subjective requirement is satisfied on this motion.

"In order to satisfy the objective component, 'the misconduct must be severe or pervasive.'" Id. (quoting Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004)).  In this context, the Second Circuit has instructed:

> The matter of whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive work environment," is to be decided based on the totality of the circumstances, in light of such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)).

A single incident can form the basis of an actionable hostile work environment claim, but the incident must be "extraordinarily severe" such that it "sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability."  Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001)(interior quotation marks and citations omitted), cert. denied, 537 U.S. 824 (2002). The law of this Circuit requires "that the incident constitute an 'intolerable alteration' of the plaintiff's working conditions so as to substantially interfere with or impair [the plaintiff's] ability to do [her]  job."  Mathirampuzha v. Potter, — F. 3d —, -----,  2008 WL 4764335, at * 7 (2d Cir. Nov. 3, 2008) (quoting Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) and citing Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004)).

While repeated and unremedied conduct by a fellow corrections officer that

9

undermines another corrections officer's authority can be the basis of an actionable hostile work environment claim, see Dawson v. County of Westchester, 373 F.3d 265, 273-274 (2d Cir. 2004); Howley, 217 F.3d at 154-56, that is not the situation presented here. Rather, this matter concerns an isolated incident in which a civilian employee acted in an inappropriate manner with inmates that he thought was funny;  the incident lasted for a very brief period;  there were no physical threats or other potentials for danger actually existing at the time of the incident; the perpetrator complied almost immediately with Plaintiff's commands to cease;  the conduct was immediately reported to superiors; Plaintiff was almost immediately removed from the situation;  the perpetrator apologized for his conduct in short order; and an investigation resulted in discipline to the perpetrator for the conduct.

Looking at the totality of the circumstances and taking the facts in the light most favorable to Plaintiff, no reasonable fact finder could conclude that the isolated incident objectively altered the conditions of Plaintiff's employment for the worse and created an intolerable and abusive work environment. See Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002)("Corrections officers [] work in an environment that can pose physical dangers and requires trust and confidence among co-workers.  But Alfano has not pointed to any conduct that endangered her or her authority in a way that would drive her from a perilous employment. She was simply embarrassed on a *handful of occasions* over a period of four years by the boorish behavior of one or more unidentified co-workers and by one fellow officer who made a dumb joke.")(emphasis added).  Thus, the Plaintiff  has failed to establish that the work environment was objectively hostile.

Furthermore, no reasonable fact finder could conclude that Brunson acted in the

manner that he did because of Plaintiff's gender.  See  Oncale, 523 U.S. at 81 (Plaintiff must show that the working environment was not merely hostile or abusive, "but actually constituted 'discrimina[tion] ... because of ... gender.'")(alteration in original; quoting 42 U.S.C. § 2000e-2(a)(1)); Alfano, 294 F. 3d at 374 ([I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex.")(citations omitted).  There are no facts indicating that Brunson took out and operated the "Mr. Butt Face Pen Holder" toy to taunt Plaintiff or to make some sexual suggestion to her.  Brunson testified that he was unaware of Plaintiff's presence when he took the toy out to amuse the inmates.  The undisputed facts indicate that this was Plaintiff's first time in the maintenance area and Plaintiff's speculation that Brunson was aware of her presence is insufficient to create a material question of fact on summary judgment. See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)( A party opposing a properly supported motion for summary judgment may not rest upon conclusory allegations or unsubstantiated speculation); Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)(The nonmoving party cannot defeat summary judgment by a factual argument based on "conjecture or surmise."); see also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

Further, despite that the inmates looked at Plaintiff as they laughed at the toy, there are no facts indicating that her gender had anything to do with Brunson's conduct. The conduct, although boorish and inappropriate in any setting, was as offensive to objectively reasonable male employees as it was to Plaintiff.  Consequently, although Plaintiff was the

11

only female in the maintenance area on June 9, 2005, there is no indication that her gender caused the conduct at issue. See Harris, 510 U.S. at 25 ("The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."); Alfano, 294 F.3d at 377 ("It is [] important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.); Brown v. Henderson, 257 F.3d 246, 254 (2d Cir. 2001)(discussing the "because of sex" requirement;  Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999)("An environment which is equally harsh for both men and women" does not constitute an actionable hostile work environment because it does not contain the necessary causal connection between a protected class and the conduct in issue.); LaGrande v. Decrescente Distributing Co., Inc., 2008 WL 2385799, at * 4 (N.D.N.Y. June 9, 2008)("To show that the alleged harasser's conduct was 'because of his sex,' a plaintiff may either '[1] show that the alleged harasser's behavior constituted an earnest sexual solicitation ... [2] demonstrate that the harasser displayed a general hostility to males in the workplace ... [or 3] under certain circumstances ... offer direct comparative evidence about the harasser's treatment of men and women....'")(quoting English v. Pohanka of Chantilly, Inc., 190 F. Supp.2d 833, 843 (E.D. Va. 2002)).

### 2.    Basis to Impute Conduct to Employer

Assuming *arguendo* that a hostile work environment was created by Brunson's conduct, Plaintiff must "demonstrate a specific basis for imputing the conduct creating the

12

hostile work environment to the employer." Feingold v. New York, 366 F.3d 138, 150 (2d

Cir. 2004).   Because a non-supervisor is alleged to have created the hostile environment,

Plaintiff may demonstrate this basis by showing that "the employer either provided no

reasonable avenue for complaint or knew of the harassment but did nothing about it." Id.

at 152 (citations omitted); see Richardson v. New York State Dep't of Correctional Service,

180 F.3d 426, 441 (2d Cir. 1999)(In the case of co-worker harassment, "the employer will

be liable only if it is negligent, that is, if it either provided no reasonable avenue for

complaint or knew of the harassment but did nothing about it."); Quinn v. Green Tree

Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998)(When a co-employee creates the hostile

work environment, "the employer will generally not be liable unless the employer either

provided no reasonable avenue of complaint or knew of the harassment but did nothing

about it.")(internal quotation marks omitted).

     Here, the undisputed facts reveal that the employer provided reasonable avenue for

complaint and took prompt action in relation thereto.   Plaintiff was quickly relieved from her

post on the day in question; met with a female officer to calm her down; filed an incident

report; and heard an apology from Brunson.   The employer promptly engaged in a formal

investigation based on Plaintiff's compliant, including interviews with Plaintiff and Brunson,

and found Plaintiff's allegations to be substantiated.   The employer's investigator reported

her findings, recommendations, and conclusion to superior officers who acted on those

recommendations.   Brunson was counseled and mandated to attend sexual harassment

training, and the prison Superintendent sent a memorandum to all department heads

reiterating DOCS policies relative to the situation that Plaintiff encountered.   No

reasonable fact finder could conclude that the employer "did nothing" after learning of the

conduct.

Plaintiff's contention that the employer's response was unreasonable because she was not assigned an administrative position without inmate contact is based on the surmise and speculation that co-workers and superior officers would not have supported her *if* she returned to Shawangunk.  As indicated above, such surmise and speculation is insufficient to create a genuine question of material fact sufficient to defeat summary judgment. See Scotto, 143 F.3d at 114; Bryant, 923 F.2d at 982.  Further, an assignment to an administrative position would not necessarily have done anything to end the complained-of sexual harassment, but rather would have only addressed Plaintiff's fears that co-workers *might not* have supported her if she returned to work.  A victim of sexual harassment is entitled to a remedy reasonably calculated to end the harassment, but the victim is not entitled to choose her remedy and then argue that the employer's response is unreasonable because she does not get what she wants. See Stepheny v. Brooklyn Hebrew School for Special Children, 356 F. Supp.2d 248, 265-266 (E.D.N.Y. 2005)(granting summary judgment dismissing hostile environment claim where employer took prompt, effective, and remedial action to end co-worker harassment); Gonzalez v. Beth Israel Med. Ctr., 262 F. Supp.2d 342, 355 (S.D.N.Y.2003)("An employer's remedy need not necessarily expel the harasser from the work environment to be effective, but rather it should be sufficiently calculated to end the harassment.") (citation and internal quotation omitted).

The undisputed evidence reveals that the employer took prompt and reasonable remedial action calculated to end the harassment.  Given the totality of the circumstances, including the fact that Plaintiff did not return to work at Shawangunk and never worked

with Brunson again, no reasonable fact finder could conclude that the employer's response to her complaint was unreasonable.  Therefore, the employer is shielded from liability on the hostile work environment claim.

For the reasons discussed above, the hostile work environment claim is dismissed.

**b.    Retaliation**

Plaintiff also asserts a claim of unlawful retaliation under Title VII.   "Retaliation claims are governed by the burden-shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)."  Walker v. New York City Transit Auth., 2001 WL 1098022, at * 7 (S.D.N.Y. Sept. 19, 2001).   To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she was engaged in protected activity; (2) the employer was aware of Plaintiff's participation in the protected activity; (3) the employer took adverse action against Plaintiff; and (4) a causal connection existed between the Plaintiff's protected activity and the adverse action taken by the employer. Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003).  The burden of establishing this *prima facie* case in employment discrimination cases is "minimal." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

There can be no dispute that Plaintiff engaged in protected activity that management was aware of when she reported Brunson's conduct. Thus, the first and second prongs are amply supported by the record. The evidence supporting the third and fourth prongs of the *prima facie* case, however, is less compelling.

As to the conduct occurring when Plaintiff returned to Shawangunk to pick up a copy of her sexual harassment complaint (*i.e.* being handed a blank transfer document

and being called a derogatory female epithet by a co-worker), there is no evidence that Plaintiff reported the conduct to the employer or that the conduct arose to the level of an adverse action.  While an employer-imposed transfer that requires more commuting time and less desirable hours (as Plaintiff contends was the situation with her transfer to Fishkill) could constitute an adverse action for purposes of the third prong of the *prima facie* case, the undisputed evidence indicates that Plaintiff requested the  transfer to Fishkill.  Although someone at Shawangunk gave Plaintiff blank transfer documents, there is no evidence that the employer imposed the transfer or prevented her from returning to work at Shawangunk.

Similarly, while the creation of a hostile work environment can satisfy the third prong of the *prima facie* case, see Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)(A plaintiff satisfies the third prong of establishing a *prima facie* case of retaliation if she can show that a reasonable employee would have found the employer's conduct materially adverse as to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination") (internal quotations omitted); Richardson, 180 F.3d at 446 ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the [third] prong of the retaliation *prima facie* case."); see also Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir. 2004)("With respect to hostile work environments, we have stated that '[o]ur precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass.'")(quoting Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)); Lore v. City of Syracuse, --- F. Supp.2d ----, 2008 WL 4736654 at * 11

(N.D.N.Y. Oct. 30, 2008),[3]  the incidents of name calling and being handed transfer documents on the same day at Shawangunk are insufficient to establish a hostile work environment. The conduct was not extraordinarily severe and did not "constitute an 'intolerable alteration' of the plaintiff's working conditions so as to substantially interfere with or impair [the plaintiff's] ability to do [her]  job." Mathirampuzha, 2008 WL 4764335, at * 7.

Plaintiff's speculation that she would have been unsupported by her co-workers if she returned to work at Shawangunk is insufficient to establish either that a hostile work environment would have existed is she returned, or that the transfer to Fishkill was her only option to avoid an abusive work environment.  See Bickerstaff v. Vassar College, 196 F.3d 435, 456  (2d Cir.1999)(The Plaintiffs' "feelings and perceptions of being discriminated against are not evidence of discrimination."); McDonald v. Maimonides Med. Ctr., 2002 WL 257818, at * 6 (E.D.N.Y. Jan. 3, 2002)("McDonald's subjective feelings as to what Dunn might have been thinking cannot amount to evidence of age

---

[3]In Lore, Judge Hurd wrote:

[T]he Supreme Court has expanded the scope of conduct constituting an "adverse action" in relation to a Title VII retaliation claim. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 66, 126 S.Ct. 2405, 2414, 165 L. Ed.2d 345 (2006). The anti-retaliation provision within Title VII is no longer limited to  employment-related acts of retaliation and can include harm occurring outside the workplace. Id. at 63-64, 126 S. Ct. at 2412 (citing Rochon v. Gonzales, 438 F.3d 1211, 1213 (D.C. Cir. 2006)(holding FBI's failure to investigate death threats made against an FBI agent and his wife was actionable retaliation under Title VII); Berry v. Stevinson Chevrolet, 74 F.3d 980, 984, 986 (10th Cir. 1996)(determining employer's filing of false criminal charges against employee who complained of discrimination was sufficient act of retaliation)).

2008 WL 4736654 at * 11.

discrimination."); see also Bickerstaff, 196 F. 3d at 448.[4]  Thus, to the extent the retaliation

claim is based on conduct at Shawangunk, or upon an employer-imposed transfer to

Fishkill, the claim is dismissed.

Plaintiff also asserts that once at Fishkill, her coworkers retaliated against her by

creating a hostile work environment.  Plaintiff asserts in her affidavit that it was her belief

that "the circumstances at Shawangunk had been communicated to co-workers at Fishkill"

and that this resulted in her being "put on 'the burn' at Fishkill" as a form of retaliation.  Plf.

Aff.  ¶ 10.  However, other than these two conclusory allegations contained in Plaintiff's

affidavit, she attempts to support the third and fourth prongs of the *prima facie* case

through a 161 page handwritten "log book" in which Plaintiff purportedly recorded the

events that occurred to her at Fishkill.  It is well settled that hearsay is insufficient to

withstand a motion for summary judgment. See Fed. R. Civ. P. 56(e)(1) (stating that an

affidavit opposing summary judgment "must be made on personal knowledge, set[ting] out

facts that would be admissible in evidence"); Feingold, 366 F.3d at 155 n. 17 ("In reviewing

the district court's grant of summary judgment, ... we may only consider admissible

testimony."); Patterson v. County of Oneida, 375 F.3d 206, 222 (2d Cir. 2004) (finding that

hearsay evidence regarding another person's tolerance for racial behavior was "not

---

[4] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of
> discrimination and evidence that gives rise to mere speculation and conjecture. This
> undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion
> or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the
> basis of another fact that is known to exist. Thus, the question is whether the evidence can
> reasonably and logically give rise to an inference of discrimination under all of the
> circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

18

competent evidence in opposition to summary judgment").  The log book is, primarily, an out of court statement by Plaintiff offered to prove the truth of the matters asserted therein. Thus, it is classic hearsay.  See Fed. R. Evid. 801; Collins v. Kibort, 143 F.3d 331, 338 (7th Cir. 1998)("Collins submitted the diary entries to prove that the events reported therein actually occurred. . . .  As such, the diary entries are hearsay.").  Plaintiff does not offer an exception to the hearsay rule for the log book entries, although the exception contained at Fed. R. Evid. 803(5) *might* make the majority of the contentions in the log book admissible at trial. See Collins, 143 F. 3d at 338 ("For a diary to be admissible under Rule 803(5), the party seeking to admit the document must establish 1) that the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately; and 2) that the witness made or adopted the record when the matter was fresh in the witness's memory and the record reflects that knowledge correctly.").

Assuming that Plaintiff could lay the proper foundation making her own statements and observations in the log book admissible at trial pursuant to Fed. R. Evid. 803(5), Plaintiff could establish the third prong of the *prima facie* case.  As indicated above, unchecked co-worker harassment can, when it reaches "critical mass," constitute an adverse employment action for purposes of a retaliation claim. Deters, 368 F.3d at 189. The log book contains numerous incidents when Plaintiff contends she was improperly disciplined or harassed by her co-workers.  A reasonable fact finder could conclude that the incidents of harassment reached this critical mass at Fishkill.

The fourth prong of the *prima facie* case requires that Plaintiff establish a causal connection between the protected activity and adverse action.  Plaintiff asserts that, based

19

on statements made by personnel at Fishkill about their knowledge of her sexual harassment complaint at Shawangunk, she has established a causal connection between the complaint (protected activity) and being "put on the burn" (adverse employment action).  However, the statements by these third parties, contained in her log book, are also hearsay.  Plaintiff has offered no exception for their admissibility, and none is apparent.  Therefore, the statements of these third parties cannot be considered on this motion. See Commodari v. Long Island Univ., 2002 U.S. Dist. LEXIS 26225, at *48 - *49 (E.D.N.Y. March 25, 2002).[5]

Nevertheless, Plaintiff also argues that there is a temporal proximity between her sexual harassment complaint at Shawangunk and the adverse action of being "put on the burn" at Fishkill sufficient to satisfy the fourth prong of the *prima facie* case.  "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  Cifra v. General Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001)(quotation marks omitted).  "[W]here . . . circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required." Bennett v. Goord, 343 F.3d 133, 139 (2d Cir. 2003); see Gayle v. Gonyea, 313 F. 3d 677, 684 (2d Cir. 2002) ("[C]ircumstantial evidence may be . . .

---

[5]In Commodari, the District Court wrote:

Commodari asserts that a student told him that she overheard Rogers tell another member of the chemistry department: "Now we will never get rid of that fucking wop, because of the petition those CHEM 3 students signed." Pl. Mem. at 68. Commodari recorded this incident in his personal diary, but has not provided an affidavit from the student. Pl. Disc. Ex. A at 62. This statement is plainly hearsay under Federal Rule of Evidence 801, and is therefore inadmissible at trial and cannot be used to create a triable issue of fact. See Fed. R. Civ. P. 56(e) (summary judgment based on "such facts as would be admissible in evidence"); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 357 (2d Cir. 1997). Accordingly, the alleged statement cannot be considered.

20

sufficient to raise a genuine issue of material fact to preclude a grant of summary

judgment.").  While case law "uniformly hold[s]" that the temporal link "must be very close,"

Clark Co. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001), the Second Circuit "has not

drawn a bright line to define the outer limits beyond which a temporal relationship is too

attenuated to establish a causal relationship between the exercise of a federal

constitutional right and an allegedly retaliatory action."  Gorman-Bakos v. Cornell Coop.

Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001) (quotation marks

omitted and citation).

Plaintiff asserts that the she was "put on the burn" almost as soon as she started at

Fishkill.  Because she had not worked between the date of her complaint and her transfer

to Fishkill, the temporal relationship is sufficiently close to satisfy the requirement on the

fourth prong.  Thus, although her circumstantial evidence of a causal connection between

her sexual harassment complaint and being "put on the burn is not particularly

compelling,[6] it is sufficient to meet her minimal burden of establishing the fourth element of

the *prima facie* case.  Defendant has not offered a legitimate, no-discriminatory reason for

the alleged adverse action.  Therefore, the motion for summary judgment as to the

retaliation claim is denied.

---

[6]During her deposition, Plaintiff described an early incident at Fishkill that resulted in her being "put on the burn."  See Plf. Dep. pp. 114-18.  The incident involved a situation during a fire drill at the facility where a superior officer, Sergeant Clark, ordered her to ascend a set of stairs to an area in which inmates were returning following the fire drill.  When Plaintiff questioned whether it was safe to ascend the stairs and enter the area because there was no "security staff" in the area,  Sergeant Clark yelled at her to "go on up this stairs unless you're scared."  Id. p. 116.  Plaintiff felt that Clark's conduct was inappropriate and she spoke to a lieutenant and Clark about it.  Id.  Plaintiff asserts that "[t]hey put me on the burn after that because they thought that I was going to put in a complaint on Sergeant Clark, and they treated me terrible."  Id. p. 118.  Based on this testimony, a reasonable fact finder could conclude that Plaintiff was put on the burn because of her conduct at Fishkill, not because of her complaint of sexual harassment at Shawangunk.

**V.      CONCLUSION**

For the reasons discussed above, Defendant's motion for summary judgment is

**GRANTED IN PART and DENIED IN PART**.  The motion is granted as to the claim of

sexual harassment - hostile work environment at Shawangunk Correctional Facility, and

that claim is **DISMISSED**.   The motion is denied as to a claim of retaliation occurring at

Fishkill Correctional Facility.

**IT IS SO ORDERED**

DATED:December 2, 2008

Thomas J. McAvoy
Senior, U.S. District Judge